UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MORGAN     STANLEY     SMITH
BARNEY LLC,

      Plaintiff,

                          Case No.  _____

v.

                          Hon. _____

PATRICK T. O'NEILL, BRADLY A.
BLAUSEY,     LINDSAY     O.
CORNEILLE,   JANICE  W.  LO,
WILLIAM  S.  HARTSOCK, ROBIN
STACK,  ANNE  ELIZABETH  C.
HOLUB, and CAROL HARTSOCK,

      Defendants.
_____/

Saretsky Hart Michaels + Gould PC
Attorneys for Plaintiff
By:   Gary M. Saretsky (P31708)
       Brian Witus (P53062)
       Colleen M. Nickel (P79220)
995 S. Eton
Birmingham, Michigan 48009
(248) 502-3300
gsaretsky@saretsky.com
bwitus@saretsky.com
cnickel@saretsky.com
_____/

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff, Morgan Stanley Smith Barney LLC ("Morgan Stanley"), by and

through  its  attorneys,  Saretsky  Hart  Michaels  +  Gould  PC,  respectfully

requests this Court enter a temporary restraining order and preliminary injunction against Defendants, Patrick O'Neill ("O'Neill"), Bradly Blausey ("Blausey"), Lindsay Corneille ("Corneille"), Janice Lo ("Lo"), William Hartsock ("W. Hartsock"), Robin Stack ("Stack"), Anne Holub ("Holub"), and Carol Hartsock ("C. Hartsock") (collectively, "Defendants"), pursuant to Rule 65 of the Federal Rules of Civil Procedure.

1.     Morgan Stanley has filed a Complaint with the Court, which is incorporated herein by reference.

2.     Pursuant to Section 13804 of the FINRA Code of Arbitration Procedure, Morgan Stanley has the express and exclusive right to seek temporary injunctive relief from a court of competent jurisdiction pending an arbitration hearing before a full panel of duly-appointed FINRA arbitrators.

3.     As stated in Morgan Stanley's Complaint, Defendants are former employees of Morgan Stanley's Farmington Hills, Michigan branch office. By virtue of their employment, Defendants had access to confidential, proprietary and trade secret records and customer account information for thousands of Morgan Stanley clients and securities accounts.  Pursuant to their employment agreements, Defendants expressly agreed that such information and documents constitute Morgan Stanley's property and constitute confidential

and trade secret information, including confidential, proprietary and trade secret information regarding Morgan Stanley's customers and their accounts.

4.     Defendants collectively had a direct connection to Morgan Stanley clients whose accounts totaled more than $336 million in assets under management, and which generated nearly $3 million in commission and fee revenue to Morgan Stanley in the last 12 months alone.

5.     When Defendants accepted employment at Morgan Stanley, they agreed to certain terms and conditions of employment. Specifically, Defendants were prohibited upon the termination of employment from, among other things: (1) retaining Morgan Stanley's confidential/trade secret information; (2) using Morgan Stanley's confidential/trade secret information; (3) disclosing Morgan Stanley's confidential/trade secret information to third parties; and (4) soliciting the business of Morgan Stanley customers.

6.     In the course of their employment with Morgan Stanley, Defendants also annually agreed to abide by the Morgan Stanley Code of Conduct, which prohibited them from (1) retaining Morgan Stanley's confidential customer information, (2) disclosing Morgan Stanley's confidential customer information to third parties, and (3) using Morgan Stanley's confidential customer information for any purpose other than the business of Morgan Stanley. In addition, during their employment, Defendants owed their

employer, Morgan Stanley, a fiduciary duty of loyalty, which encompassed the duty to refrain from soliciting Morgan Stanley employees to leave Morgan Stanley.

7.      On Friday, February 16, 2018, Defendants resigned en masse from their positions at Morgan Stanley and immediately joined Morgan Stanley's direct competitor, Raymond James & Associates, Inc. ("Raymond James").

8.      Before they resigned, Defendants improperly, and in violation of their employment agreements, the Morgan Stanley Code of Conduct, state and federal statutes, as well as the common law, converted for their own use and the use of their new employer, Raymond James, confidential and proprietary business and customer account records and information.

9.      Upon information and belief, Defendants used those records and information to solicit Morgan Stanley customers to terminate or alter their business relationship with Morgan Stanley and to begin doing business with Defendants at Raymond James or elsewhere.

10.     For the reasons stated in the Complaint and the accompanying Brief in Support of this Motion (which are incorporated herein by reference), unless Defendants are enjoined from retaining and using Morgan Stanley's property for their own use and from wrongfully soliciting Morgan Stanley's clients and employees, Morgan Stanley will be irreparably harmed by:

a.     Disclosure of trade secrets, customer lists, and other confidential information which are solely the property of Morgan Stanley and its clients;

b.     Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c.     Loss of personnel, damage to office stability and a threat to the enforcement of reasonable contracts; and

d.     Incalculable financial loss.

11.     Morgan Stanley has no adequate remedy at law, a fact to which Defendants acknowledged and agreed by executing their Morgan Stanley employment agreements.

12.     Defendants also expressly consented to injunctive relief for the foregoing violations of their employment agreements.

Wherefore, Morgan Stanley respectfully requests that this Court order that:

(1)     Defendants, and anyone acting in concert or participation with Defendants, specifically including Defendants' counsel and any agent, employee, officer, or representative of

Raymond James, be immediately ordered to preserve and return to Morgan Stanley's counsel any and all records, documents or information pertaining to Morgan Stanley and/or its customers ("Customer Information"), whether in original, copied, handwritten, electronic (including cell phones), computerized (including computer software, disks, computer hard drive and/or any other type of electronic or digital information storage device) or memorialized in any other form.

(2)    Defendants be immediately enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including, but not limited to, any officer, agent, employee, and/or representative of Defendants' new employer, Raymond James, until hearing and thereafter until further order of this Court and/or the arbitrators from doing any of the following:

i)    Soliciting or otherwise initiating any further contact or communication with any client of Morgan Stanley whom Defendants served or whose names became known to them while in the employ of Morgan Stanley for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Morgan Stanley according to the terms of their respective employment agreements;

ii)    Soliciting or otherwise initiating any further contact or communication with any client of Morgan Stanley whose records or information Defendants used in violation of their Morgan Stanley employment agreements or in violation of the Morgan Stanley Code of Conduct which they acknowledged receiving. This specifically includes any client whom Defendants may have contacted by regular mail, email, phone or otherwise through the use of any information obtained by Defendants while in the employ of Morgan Stanley according to the terms of their respective employment agreements;

6

iii)   Using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Morgan Stanley or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients;

iv)   Destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Defendants' possession or control which were obtained from or contain information derived from any Morgan Stanley records, which pertain to Morgan Stanley clients whom Defendants served or whose names became known to Defendants while employed by Morgan Stanley, or which related to any of the events alleged in the Verified Complaint in this action; and

v)   Soliciting Morgan Stanley employees to assist them, to resign or otherwise terminate their employment with Morgan Stanley, or to seek or accept employment at Raymond James.

(3)   This Order remains in full force and effect until such time as this Court or a duly-appointed panel of FINRA arbitrators specifically orders otherwise.

(4)   Pending a preliminary injunction hearing before this Court or the arbitrators, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to proceed expeditiously with arbitration pursuant to section 13804 of the FINRA Code of Arbitration Procedure.

(5)     Defendants shall show cause before the Court on the _____
        day of _____, 2018, at _____ o'clock __.m., or as
        soon thereafter as counsel may be heard, why a preliminary
        injunction should not be ordered according to the terms and
        conditions set forth above.

                        Respectfully submitted,

                        Saretsky Hart Michaels + Gould PC
                        Attorneys for Plaintiff

                        By: /s/Gary M. Saretsky_____
                            Gary M. Saretsky (P31708)
                            Brian Witus (P53062)
                            Colleen M. Nickel (P79220)
                            995 S. Eton
                            Birmingham, Michigan 48009
                            (248) 502-3300
                            gsaretsky@saretsky.com
                            bwitus@saretsky.com
                            cnickel@saretsky.com

Dated:  February 21, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MORGAN    STANLEY    SMITH
BARNEY LLC,

      Plaintiff,

                      Case No.  _____

v.

                      Hon. _____

PATRICK T. O'NEILL, BRADLY A.
BLAUSEY,    LINDSAY    O.
CORNEILLE,   JANICE  W.  LO,
WILLIAM  S. HARTSOCK, ROBIN
STACK,  ANNE  ELIZABETH  C.
HOLUB,    and    CAROL
HARTSOCK,

      Defendants.

_____/

Saretsky Hart Michaels + Gould PC
Attorneys for Plaintiff
By:  Gary M. Saretsky (P31708)
   Brian Witus (P53062)
   Colleen M. Nickel (P79220)
995 S. Eton
Birmingham, Michigan 48009
(248) 502-3300
gsaretsky@saretsky.com
bwitus@saretsky.com
cnickel@saretsky.com

_____/

**<u>MEMORANDUM IN SUPPORT OF MORGAN STANLEY SMITH BARNEY
LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTIVE RELIEF</u>**

## **TABLE OF CONTENTS**

1.   Table of Authorities.................................................................iii-iv

2.   Questions Presented .................................................................. v

3.   Introduction...............................................................................1

4.   Factual Background...................................................................2

    A.   Procedural Background Regarding Contacts with
       Defendants' Counsel ........................................................3

    B.   Substantive Background Regarding Defendants'
       Misconduct .......................................................................5

5.   Argument...................................................................................7

    I.   Standard of Review ..........................................................7

    II.   A Temporary Restraining Order is Necessary to
        Immediately Enjoin Defendants from Violating
        Their Employment Agreements, the Michigan Uniform
        Trade Secrets Act and the Defend Trade Secrets Act .....7

    III.   Morgan Stanley is Entitled to an Injunction ...................10

        A.   Morgan Stanley is Likely to Succeed on the
           Merits ................................................................11

           1.   Breach of Contract ......................................11

           2.   Violation of MUTSA .....................................14

           3.   The Defend Trade Secrets Act ....................15

           4.   Conversion ...................................................16

           5.   Breach of Fiduciary Duty .............................17

6.      Unfair Competition.......................................17

B.   Morgan Stanley Has No Adequate
     Remedy at Law ....................................................18

C.   An Injunction Will Not Cause Harm
     to Others ............................................................20

D.   The Public Interest is Supported By
     Issuing An Injunction ...........................................21

6.   Conclusion .................................................................22

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.*,
497 Mich. 337, 346, 871 N.W.2d 136, 141 (2015) .................................... 16

*ATCO Industries, Inc. v. Sentek Corporation, et al.*,
2003 WL 21582962, *3 (Mich.App., July 10, 2003) ................................... 17

*Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992) ............... 18

*Citigroup Global Markets, Inc. v. Schumer*, 2:03-cv-00185-GJQ
(W.D. Mich., Sept. 4, 2003) ........................................................................ 11

*Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114,
118 (6th Cir. 1979) ..................................................................................... 17

*Follmer, Rudzewwicz & Co, PC v. Kosco*, 420 Mich. 394,
402-404, 676, 680 N.W.2d 676, 680-81 (1984) ......................................... 14

*Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) ...... 7

*Hamama v. Adducci*, 261 F. Supp. 3d 820, 828
(E.D. Mich. 2017) .............................................................. 7, 11, 18, 20, 21

*JPMorgan Chase Bank, NA v. Wirtanen*,
2:15-cv-11929-DPH-MKM (E.D.Mich., June 3, 2015) .................... 10, 18, 21

*Kelly Services, Inc. v. Noretto*, 495 F.Supp. 2d. 645, 658
(E.D. Mich. 2007) ......................................................................... 14, 18, 19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Inman*,
2:04-cv-74286-VAR-MKM (E.D. Mich., Nov. 3, 2004) ............................... 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ran*,
67 F.Supp.2d 764, 781 (E.D.Mich.1999) .................................................... 21

*Morgan Stanley DW Inc. v. Cini, 2:05-cv-73257-DPH-RJW
(E.D. Mich., Aug. 29, 2005)* .......................................................................... 10

*Morgan Stanley DW Inc. v. Melone*, No. 01-73259 (E.D. Mich. 2002).......10

*Wells Fargo Advisors, LLC v. Carter*, No. 1:09-cv-517
(W.D.Mich., June 5, 2009) ........................................................................10


## Statutes

18 U.S. § 1836......................................................................................8, 15
M.C.L. 445.1901, *et. seq*............................................................................8
M.C.L. 445.1902 ..............................................................................13, 15
M.C.L. 445.1903(1).....................................................................................8


## Other Authorities

Black's Law Dictionary, 10th Edition ...........................................................15


## Rules

Federal Rule of Civil Procedure 5.2 .............................................................2
Federal Rule of Civil Procedure 65. .............................................................5

## **QUESTION PRESENTED**

WHETHER A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF SHOULD BE GRANTED WHEN DEFENDANTS HAVE MISAPPROPRIATED CONFIDENTIAL INFORMATION AND TRADE SECRETS BELONGING TO PLAINTIFF IN VIOLATION OF BOTH STATUTES AND THE PARTIES' CONTRACTS, VIOLATED NON-SOLICITATION AGREEMENTS AS TO CUSTOMERS, SOLICITED PLAINTIFF'S CUSTOMERS TO LEAVE PLAINTIFF WHILE DEFENDANTS WERE EMPLOYED BY PLAINTIFF, AND WHERE PLAINTIFF HAS NO ADEQUATE REMEDY AT LAW?

PLAINTIFF'S ANSWER "YES".

## INTRODUCTION

Plaintiff, Morgan Stanley Smith Barney LLC ("Morgan Stanley"), seeks a temporary restraining order and preliminary injunctive relief because Defendants, Patrick O'Neill ("O'Neill"), Bradly Blausey ("Blausey"), Lindsay Corneille ("Corneille"), Janice Lo ("Lo"), William Hartsock ("W. Hartsock"), Robin Stack ("Stack"), Anne Holub ("Holub"), and Carol Hartsock ("C. Hartsock") (collectively, "Defendants"), willfully breached the terms of their Morgan Stanley Employment Agreements and Code of Conduct, breached their fiduciary duties owed to Morgan Stanley, and improperly converted and transferred confidential, proprietary and trade secret information regarding Morgan Stanley's customers for their own use and to the benefit of their new employer, Raymond James & Associates, Inc. ("Raymond James"). Morgan Stanley's Complaint is attached as Exhibit "1."

Pursuant to their Employment Agreements, Defendants expressly agreed that such documents and information constitute Morgan Stanley's property and constitute Morgan Stanley's confidential and trade secret information. Defendants also expressly consented to issuance of a temporary restraining order and/or a preliminary injunction necessary to ensure compliance with the terms and conditions of their Employment Agreements.

1

Morgan Stanley seeks an injunction to enforce the Defendants' confidentiality and non-solicitation agreements, whereby Morgan Stanley seeks to protect its property and its confidential and trade secret information by making sure it is properly returned, and is not in the possession of non-Morgan Stanley personnel.  The very purpose of a temporary restraining order is to protect this exact type of information.

Unless Defendants are immediately enjoined by this Court, Morgan Stanley will suffer severe and irreparable harm in the loss of confidential and trade secret information and customer relationships due to Defendants' wrongful conversion of Morgan Stanley records, improper solicitation of Morgan Stanley clients, and the loss of good will resulting from their actions.  Immediate injunctive relief is warranted.

## **FACTUAL BACKGROUND**

Morgan Stanley incorporates the factual background allegations and supporting exhibits set forth in its Complaint. Exhibit "1". As set forth in the Complaint, Defendants signed Morgan Stanley Employment Agreements and executed certifications agreeing to be bound by Morgan Stanley's Code of Conduct, which include numerous restrictive covenants concerning Defendants' duties and obligations to Morgan Stanley including with respect to post-resignation matters.

On February 16, 2018, Defendants submitted resignation letters to Chad Kasprzak ("Kasprzak"), the branch manager of Morgan Stanley's Farmington Hills, Michigan branch office where Defendants worked. Kasprzak immediately initiated an investigation of Defendants' offices, workstations, file cabinets and the like, as well as an investigation of Morgan Stanley's electronic records and security records regarding the Morgan Stanley branch office building. See generally, Exhibit "2": Affidavit of Chad Kasprzak. Through the investigation, Morgan Stanley became aware of activity that warranted filing the Complaint seeking immediate injunctive relief, as discussed below.

### A. Procedural Background Regarding Contacts with Defendants' Counsel

On February 16, 2018, the undersigned law firm sent a letter (Exhibit "3") to each Defendant via Federal Express and e-mail as follows: Blausey at 5:54pm; Corneille at 5:56pm; H. Hartsock at 6:00pm;  Holub and 6:01pm; Lo at 6:03pm; O'Neill at 6:05pm; and Stack at 6:06pm. (Attached as Exhibit "4" are the emails sent to Defendants enclosing the letter). The letter explained that Morgan Stanley, based on its preliminary and ongoing investigation, reasonably believed that Defendants were in violation of the terms and conditions of their Employment Agreements with Morgan Stanley, and, specifically, their confidentiality and non-solicitation

covenants. Morgan Stanley demanded that Defendants preserve all evidence related to their departure from Morgan Stanley and their recruitment and hiring by Raymond James. Morgan Stanley further requested that Defendants abide by the terms and conditions set forth in their respective agreements with Morgan Stanley.

Within the hour, at 6:52pm, David A. Gehn of Ellenoff Grossman & Schole LLP emailed the undersigned advising that his office represents Defendants. Exhibit "5". In sum, Mr. Gehn claimed that Morgan Stanley's letter was too generic because it did specify the documents Defendants took, the clients that were solicited, nor the identity of the "largest client" referenced in the letter. Mr. Gehn's response, namely, his deflection to Morgan Stanley to provide the specifics (i.e., a wait a see tactic to determine how much Morgan Stanley actually knows at this point), immediately escalated Morgan Stanley's concern over Defendants' actions.

Accordingly, the undersigned emailed Mr. Gehn again on Sunday, February 18, 2018 explaining the newly heightened concerns following his vague response. Exhibit "6". Specifically, Morgan Stanley explained that Mr. Gehn had not provided any assurances that his clients were in compliance with terms and conditions of their non-solicitation and other restrictive covenants or that they had refrained from taking confidential information and Morgan Stanley trade secrets. Accordingly, Morgan

Stanley requested that Defendants provide all electronic devices for inspection and imaging and agree to sign affidavits stating that Defendants have not violated, and will not violate, their agreements with Morgan Stanley.  Despite giving Defendants the opportunity and means to fully and completely assuage Morgan Stanley's concerns, they refused to submit affidavits.

On Monday, February 19, 2018, Mr. Gehn responded, but again failed to address or respond to any of Morgan Stanley's substantive concerns and requests.  Mr. Gehn simply generally responded, "we are not aware of taking any documents" and summarily stated, "our clients are generally aware of their contractual obligations and are intending to honor them."  Exhibit "7".

Defendants' refusal to swear, under oath, that they have not violated their agreements with Morgan Stanley, coupled with Morgan Stanley's original concerns identified in the Complaint, warrant issuance of a temporary restraining order.

**B.    Substantive    Background    Regarding    Defendants'
        Misconduct**

The substantive background regarding Defendants' misconduct in connection with their resignations from Morgan Stanley is set forth in the Affidavit of Chad Kasprzak, which is attached hereto as Exhibit "2".

Defendants' misconduct falls into several categories:   (1) Defendants' engaged in the unusual conduct of printing large volumes of client records from Morgan Stanley's computer systems immediately prior to their resignations; (2) Defendants walked in and out of Morgan Stanley's branch office before regular business hours and removed Morgan Stanley documents; (3) Defendants removed Morgan Stanley documents from numerous client files; (4) Defendants conducted a client event the evening before their mass resignations, and solicited Morgan Stanley clients at that event, telling them that Defendants were resigning from Morgan Stanley and joining the Raymond James branch office in Livonia, Michigan; and (5) Defendants improperly used Morgan Stanley documents and information and improperly solicited Morgan Stanley clients, whereby Morgan Stanley began receiving account transfer paperwork from Morgan Stanley clients on the morning of Tuesday, February 20, 2018.  The details are set forth in the Affidavit of Chad Kasprzak, Exhibit "2".

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court has the authority to issue a preliminary injunction with notice under Rule 65(a), and a temporary restraining order without notice pursuant to Rule 65(b).  Fed. R. Civ. P. 65.  "To determine whether to grant a preliminary injunction, a district court must consider: (i) the plaintiff's likelihood of success on the merits; (ii) whether the plaintiff may suffer irreparable harm absent the injunction; (iii) whether granting the injunction will cause substantial harm to others; and (iv) the impact of its decision on the public interest."   *Hamama v. Adducci*, 261 F. Supp. 3d 820, 828 (E.D. Mich. 2017).   "These four factors 'are factors to be balanced, not prerequisites that must be met.'" *Id.* (*citing Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003)).

## II.   A TEMPORARY RESTRAINING ORDER IS NECESSARY TO IMMEDIATELY ENJOIN DEFENDANTS FROM VIOLATING THEIR EMPLOYMENT AGREEMENTS, THE MICHIGAN UNIFORM TRADE SECRETS ACT, AND THE DEFEND TRADE SECRETS ACT

A temporary restraining order is necessary to prevent Defendants from flouting the unambiguous contractual terms of their Employment Agreements – agreements that provide for the imposition of an injunction against Defendants to prevent violation of the restrictive covenants, as well as their agreements to abide by Morgan Stanley's Code of Conduct.

Defendants converted Morgan Stanley's protected trade secrets and, upon information and belief, are using that information to unfairly compete for the business of Morgan Stanley customers. Defendants' wrongful conduct is causing Morgan Stanley immediate and irreparable harm and a temporary restraining order is required to maintain the status quo pending a full and final hearing on the merits of Morgan Stanley's claim.[1]

Further, Defendants expressly acknowledged the need for injunctive relief and agreed that Morgan Stanley is entitled to both a preliminary and permanent injunction to enjoin the breach or threatened breach of the employment agreements. Exhibits "9 – 12": Employment Agreements, ¶4.1. Further, preventing violations of the Michigan Uniform Trade Secrets Act, M.C.L. 445.1901, *et. seq.* ("MUSTA"), and the Defend Trade Secrets Act, 18 U.S. § 1836, *et. seq.* by granting an injunction are specifically contemplated by the statutes. *See* M.C.L. 445.1903(1) ("Actual or threatened misappropriation may be enjoined"); 18 U.S. § 1836 (b)(3)(i) ("In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may (A) grant an injunction (i) to prevent any actual or threatened misappropriation described in paragraph

---

[1] Contemporaneously with this filing, Morgan Stanley is filing a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") commencing an Arbitration against Defendants. Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes authorizes Morgan Stanley to seek injunctive relief from this Court to maintain the status quo pending final resolution in Arbitration. Exhibit "8".

(1) on such terms as the court deems reasonable….".  Accordingly, a temporary restraining order is necessary, appropriate and reasonable in order to immediately restrain Defendants' wrongdoing.

Defendants were granted access to Morgan Stanley's highly confidential customers' information under the express condition that they would not use or disclose any customer information other than as was required to fulfill their duties and conduct Morgan Stanley's business. Exhibits "9 – 12". Prior and subsequent to their departure from Morgan Stanley, however, Defendants fully intended to, and did in fact violate their Employment Agreements and the Morgan Stanley Code of Conduct by (1) retaining lists of Morgan Stanley customers' confidential information, (2) upon information and belief, disclosing Morgan Stanley's confidential information to Raymond James, and (3) using Morgan Stanley's confidential information to solicit the business of Morgan Stanley customers. Defendants' retention, use and disclosure of Morgan Stanley's and its clients' confidential information is a clear violation of Defendants' employment agreements and similarly violates the MUTSA and the Defend Trade Secrets Act.

## III.   MORGAN STANLEY IS ENTITLED TO AN INJUNCTION

As agreed in their Employment Agreements, Defendants have expressly consented to issuance of a temporary restraining order and/or

preliminary injunction to protect Morgan Stanley's rights, and thus have acknowledged that each of the injunctive relief factors favor Morgan Stanley. Accordingly, Defendants should be estopped from contesting Morgan Stanley's right to injunctive relief. The four factors evaluated by the Court in deciding whether to grant injunctive relief all favor Morgan Stanley, and, therefore, the entry of an injunction is warranted.

From the outset, it is important to note that Courts considering circumstances substantially similar to those in the instant matter repeatedly rule in favor of injunctive relief and enjoin former employees from retaining confidential customer information and otherwise enforcing the nonsolicitation provisions of employment agreements. *See, e.g.*, *JPMorgan Chase Bank, NA v. Wirtanen*, No. 15-11929, 2015 WL 3506105 (E.D.Mich., June 3, 2015); *Morgan Stanley DW Inc. v. Cini*, 2:05-cv-73257-DPH-RJW (E.D. Mich., Aug. 29, 2005*); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Inman*, 2:04-cv-74286-VAR-MKM (E.D. Mich., Nov. 3, 2004); *Morgan Stanley DW Inc. v. Melone*, 2:01-cv-73250-GCS (E.D. Mich., Aug. 31, 2001). Collectively attached as Exhibit "13".

Judges of the United States District Court for the Western District of Michigan have entered similar orders. *See, e.g.*, *Wells Fargo Advisors, LLC v. Carter*, No. 1:09-cv-517 (W.D.Mich., June 5, 2009); *Citigroup Global*

10

*Markets, Inc. v. Schumer*, 2:03-cv-00185-GJQ (W.D. Mich., Sept. 4, 2003); Collectively attached as Exhibit "14".

### A.    Morgan Stanley Is Likely To Succeed On The Merits

The first element for the Court to consider is the likelihood of Morgan Stanley's success on the merits.  *Hamama, supra*.  As explained below, Morgan Stanley has a strong likelihood of success on the merits.

### 1.    Breach Of Contract

One of the underlying claims against Defendants is for breach of contact (the Employment Agreements) for (1) taking confidential information related to Morgan Stanley and its customers when or before they left the Firm's employ; (2) disclosing the confidential customer information to third parties including Defendants' new employer; and (3) using the confidential information to solicit the business of Morgan Stanley customers.

There is no genuine dispute that: (1) Defendants are bound by their respective Morgan Stanley employment agreements, (2) they wrongfully retained, attempted to retain and/or copied confidential Morgan Stanley and customer information prior to their resignation and refuse to return it, and (3) they used (or intend to use) the confidential information to solicit Morgan Stanley's business or persuade its customers to conduct business elsewhere.

As set forth in the Affidavit of Chak Kasprzak, (1) Defendants' engaged in the unusual conduct of printing large volumes of client records from Morgan Stanley's computer systems immediately prior to their resignations (Morgan Stanley has attached copies of the Defendants' print logs); (2) Defendants walked in and out of Morgan Stanley's branch office before regular business hours and removed Morgan Stanley documents (Morgan Stanley has attached screen shots of the security video showing the Hartsocks walking out with duffle bags and/or brief cases); (3) Defendants removed Morgan Stanley documents from numerous client files; (4) Defendants conducted a client event the evening before their mass resignations, and solicited Morgan Stanley clients at that event, telling them that Defendants were resigning from Morgan Stanley and joining the Raymond James branch office in Livonia, Michigan; and (5) Defendants improperly used Morgan Stanley documents and information and improperly solicited Morgan Stanley clients, whereby Morgan Stanley began receiving account transfer paperwork from Morgan Stanley clients on the morning of Tuesday, February 20, 2018. Furthermore, despite being given the opportunity to affirm their compliance with their Employment Agreements and Morgan Stanley's Code of Conduct, Defendants refused to certify, under oath, that they had not violated the terms of their

employment with Morgan Stanley, including the taking of confidential information and solicitation of Morgan Stanley clients.

Moreover, Defendants chose to solicit Morgan Stanley clients less than 24 hours before they terminated their employment with the Firm. At least one client attending an event hosted by O'Neill, Corneille, and Lo on February 15, 2018, stated that O'Neill specifically noted that he was leaving Morgan Stanley and joining Raymond James. Exhibit "2": Affidavit of Chad Kasprzak. This not only demonstrates that Defendants began their solicitation efforts before leaving Morgan Stanley (a clear breach of their fiduciary duties to the Firm), but it also demonstrates their willingness to solicit Morgan Stanley clients or divert Morgan Stanley business.

These facts unequivocally establish that Defendants breached the Morgan Stanley Code of Conduct while employed at Morgan Stanley and their employment agreements before and after they resigned.  Accordingly, there is a strong likelihood that Morgan Stanley will prevail on the merits of its breach of contract claims against Defendants.

## 2.    Violation Of MUTSA

Defendants have also violated the MUTSA by misappropriating Morgan Stanley's trade secrets, i.e., its confidential customer information. *See* Exhibit "2: Affidavit of Chad Kasprzak", M.C.L. 445.1902, the MUTSA's definition of "misappropriation" and "trade secret". Pursuant to their

Employment Agreements, Defendants expressly agreed that Morgan Stanley's information and documents regarding its clients constitute trade secrets.

Here, Morgan Stanley's confidential customer information constitutes a trade secret as defined by the MUTSA. *Kelly Services, Inc. v. Noretto*, 495 F.Supp. 2d. 645, 658 (E.D. Mich. 2007). "Courts have found that information such as a brokerage firm's customer lists were trade secrets for the purposes of MUTSA" and are therefore entitled to protection. *Id.* "[C]onfidential information, including information regarding customers, constitutes property of the employer and may be protected by contract. Even in the absence of a contract, an employee has a duty not to use or disclose confidential information acquired in the course of his employment." *Follmer, Rudzewwicz & Co, PC v. Kosco*, 420 Mich. 394, 402-404, 676, 680 N.W.2d 676, 680-81 (1984). Moreover, Defendants all acknowledged and agreed in their Employment Agreements and Code of Conduct attestations that Morgan Stanley's confidential customer information is a trade secret.

In this case, Morgan Stanley's confidential customer information is a trade secret entitled to the protections of the MUTSA. *Noretto, supra* at 658. Defendants misappropriated the trade secrets by improper means as a result of the breach of their duty not to disclose confidential customer

14

information ("[i]mproper means" includes … breach).  M.C.L. 445.1902(a).
Defendants misappropriated Morgan Stanley's trade secrets by taking
confidential Morgan Stanley customer information when they left the Firm's
employ (Exhibit "2"), disclosing and using the trade secret without the
consent of Morgan Stanley when, at the time of the disclosure and use
Defendants had acquired it under circumstances giving rise to a duty to
maintain its secrecy, i.e., pursuant to the restrictive covenants of
Defendants' employment agreements.  M.C.L. 445.1902(b)(ii)(B).  For the
reasons stated above, Morgan Stanley is likely to prevail on its claim
against Defendants for violation of the MUTSA.

### 3.    The Defend Trade Secrets Act

The Defend Trade Secrets Act, 18 U.S. § 1836 *et. seq.*, provides that
the owner of a trade secret that is misappropriated may bring a civil action
if "the trade secret is related to a product or service used in, or intended for
use in, interstate or foreign commerce.[2]  18 U.S. § 1836(1).  The statute
specifically contemplates injunctive relief to prevent the actual or
threatened misappropriation of the referenced trade secrets on such terms
as the Court deems reasonable.  18 U.S. § 1836 (b)(3)(i).

---

[2]  Interstate commerce is defined as "trade and other business activities between those
located in different states."  Black's Law Dictionary, 10th Edition, 2014, p. 325.

As discussed throughout this Brief, Defendants misappropriated confidential Morgan Stanley information regarding clients residing in at least 22 different states. Exhibit "2": Affidavit of Chad Kasprzak. Clearly, Morgan Stanley's trade secrets misappropriated by Defendants were used in, or were intended to be used in interstate commerce as they are located in Michigan and some of the Morgan Stanley clients they serviced are located in a variety of other states.  Therefore, there is or will be business activities between those located in different states.  Accordingly, Morgan Stanley is likely to prevail on its claim against Defendants for violation of the Defend Trade Secrets Act.

### 4.   Conversion

In Michigan, conversion is "'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'"  *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.*, 497 Mich. 337, 346, 871 N.W.2d 136, 141 (2015) (citations omitted).  As indicated, it was not within Defendants' rights to retain and disclose confidential Morgan Stanley information, such as all of the information contained within the physical client files they misappropriated, so Morgan Stanley is likely to prevail on this claim.

**5.     Breach Of Fiduciary Duty**

By (1) taking confidential Morgan Stanley customer information, (2) disclosing that information to third parties including their new employer, (3) soliciting Morgan Stanley's clients to divert their business away from Morgan Stanley to a competitor, and (4) soliciting employees to leave Morgan Stanley, Defendants breached their fiduciary duties owed to Morgan Stanley.   Simply taking the information contained within the physical client files, in and of itself, suffices to prove this cause of action.

**6.     Unfair Competition**

In Michigan, the "common law of unfair competition prohibits unfair and unethical trade practices that are harmful to one's competitors or to the general public." *ATCO Industries, Inc. v. Sentek Corporation, et al.*, 2003 WL 21582962, *3 (Mich.App., July 10, 2003) (*citing Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114, 118 (6th Cir. 1979)). Exhibit "14".   It is neither fair nor ethical to steal confidential Morgan Stanley and customer information as Defendants did here.  As a result, and as explained throughout this Brief and Morgan Stanley's Complaint, Defendants are unfairly competing with Morgan Stanley pursuant to Michigan law.

**B.    Morgan Stanley Has No Adequate Remedy At Law**

The second factor for the Court to consider is "whether the plaintiff may suffer irreparable harm absent the injunction. *Hamama, supra*. This factor, again, weighs heavily in Morgan Stanley's favor.

Absent immediate injunctive relief, it will be impossible to measure Morgan Stanley's damages with any reasonable degree of certainty, and therefore irreparable harm exists.   An injury is not fully compensable by money damages if the plaintiff's loss would make damages difficult to compute. *Wirtanen, supra* (*citing Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992)).   The loss of fair competition that results from the breach of a non-competition covenant is also likely to irreparably harm an employer. *Id.*   Moreover, "[t]he loss of goodwill from existing and prospective customers has been held to be irreparable." *Noretto, supra* at 659.

Defendants contractually agreed not to retain, use or disclose Morgan Stanley's confidential customer information.  Exhibits "9 – 12".  Defendants further contractually agreed not to solicit Morgan Stanley's customers during or after the termination of their employment.   Exhibits "9 – 12". Defendants' violation of the Morgan Stanley Code of Conduct and their continued violation of their employment agreements expressly violates the legitimate business interest of Morgan Stanley to protect its trade secrets

and enforce its contracts.  Moreover, their actions wreak havoc upon the customers' and Morgan Stanley's rights to keeping their information private.

Morgan Stanley has invested substantial time and money in acquiring and developing its customer base, which it sought to protect by operation of its Code of Conduct and employment agreements. As a result of Defendants' retention alone, and coupled with their presumed disclosure of confidential information, and their continuous unlawful competition and solicitation of Morgan Stanley's customers, Morgan Stanley's customer relationships are in jeopardy.

Here, the irreparable harm suffered by Morgan Stanley is difficult, if not impossible to ascertain.  Pecuniary losses that Morgan Stanley will incur not only from the loss of revenue from the customers that Defendants successfully solicit, but the undermining of Morgan Stanley's goodwill and confidence with its customer base due to Defendants' misconduct is nearly impossible to value or determine. *Noretto, supra at 659.*  It is not sufficient to conclude that competition in the market justifies Defendants' conduct. The only reason they have information to contact Morgan Stanley's customers is because of the confidential access they were granted in connection with their employment at Morgan Stanley – confidential access that Morgan Stanley sought to protect from use and disclosure under its Code of Conduct and employment agreements. The irreparable harm

suffered by Morgan Stanley resulting from Defendants' breach of Code of Conduct and employment agreements and the unlawful solicitation of Morgan Stanley's customers warrants the issuance of the requested preliminary injunction.

### C.    An Injunction Will Not Cause Harm To Others

Third, the Court considers "whether granting the injunction will cause substantial harm to others." *Hamama, supra*. Here, Defendants will not be harmed if the injunction in granted. They are simply being ordered to abide by the terms of their employment agreements – a duty they owed the moment they signed the contracts.

Significantly, they are free to be employed in the securities industry, to work at Raymond James, and to advise others on financial matters. They are simply not allowed to retain Morgan Stanley documents and information or solicit its clients.

Moreover, the clients are not harmed. They are free to work with the person of their choosing. But again, Defendants are not free to solicit them or to retain Morgan Stanley or client information.

Conversely, the harm to Morgan Stanley is significant and everlasting as the Firm's confidential customer information is compromised and the sanctity of contractual agreements is destroyed unless Defendants are enjoined from their conduct, ordered to return all Morgan Stanley

information and ordered to delete any information stored electronically in a way so that it cannot later be retrieved.  In the end, Morgan Stanley seeks a return to the status quo through an Order that requires Defendants to return all confidential data wrongfully converted from Morgan Stanley and to cease and desist from soliciting any Morgan Stanley customers.  Clearly, an injunction will not harm others.

### D.    The Public Interest Is Supported By Issuing An Injunction

Finally, the Court must consider "the impact of its decision on the public interest."  *Hamama, supra.*  This Court has long held that the public interest is supported by issuing an injunction in cases similar to the instant matter.  This Court has held that "[r]egarding public interest, the public has an interest in the enforcement of contracts and also in the freedom to select a broker."  *Wirtanen, supra* at *6 (*citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ran,* 67 F.Supp.2d 764, 781 (E.D.Mich.1999). The Court noted that "[t]he public also has an interest in keeping client lists confidential information." *Id.*

## CONCLUSION

For the reasons stated above and supported throughout, Morgan Stanley respectfully requests entry of a temporary restraining order and preliminary injunction pending the outcome of arbitration held in accordance with the FINRA Rules. A proposed Order is attached hereto as Exhibit "15".

Respectfully submitted,

Saretsky Hart Michaels + Gould PC
Attorneys for Plaintiff

By: /s/ Gary M. Saretsky
   Gary M. Saretsky (P31708)
   Brian Witus (P53062)
   Colleen M. Nickel (P79220)
   995 S. Eton
   Birmingham, Michigan 48009
   (248) 502-3300
   gsaretsky@saretsky.com
   bwitus@saretsky.com
   cnickel@saretsky.com

Dated:   February 21, 2018